## George R. McNeill v. City of Chicago et al.

1. MANDAMUS—*Requisites of a Petition Under the Civil Service Act.* —An applicant for a writ of mandamus to compel the mayor and superintendent of police of the city of Chicago and the civil service commissioners to place his name upon the roster of police patrolmen and upon the police pay-roll of said city, is not entitled to the writ where he fails to show that he was certified to the appointing officers of the police department for appointment, pursuant to section ten of the civil service act, in so far as he relies upon such act.

2. CIVIL SERVICE ACT—*Application of the Act as to Holdovers.*—In so far as are involved the positions of certain inspectors and captains of police of Chicago.the civil service act does not affect their tenure of office or the power of removal of such holdovers. As to all further applicants for positions, and as to filling all vacancies in the civil service the act was intended to have immediate effect and to that end the law requires the commission to classify all the offices and places of employment in the city with reference to the examinations provided for by the act, except certain offices mentioned in section eleven of the act, which exception does not apply to police patrolmen.

3. SAME—*Police Patrolmen Not Having Been Discharged.*—Appellant is a holdover police patrolman, and not having been discharged, is entitled to be restored to the city police pay roll and to receive his salary as such patrolman.

Mandamus.—Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the March term, 1900. Reversed and remanded. Opinion filed January 24, 1901.

Statement by the Court.—Appellant filed his petition for mandamus in the Circuit Court of Cook County against the city of Chicago, the mayor, superintendent of police and civil service commissioners, naming them, and praying a writ of mandamus against the defendants, commanding the first three defendants to place the name of appellant

upon the roster of police patrolmen and upon the police pay-roll of said city, so that he might hereafter draw the pay due him as police patrolman of said city from time to time, and commanding the civil service commissioners to certify the name of appellant as a person entitled to pay as a police patrolman of said city. A demurrer was sustained to the petition as finally amended, and the petition dismissed, from which order of dismissal this appeal is taken.

From the petition as amended it appears, after stating the incorporation of the city, the election of the mayor, the organization of the police department, including the office of superintendent of police, that defendant Kipley was in May, 1897, appointed such superintendent of police, and that said mayor and superintendent of police are still acting as such; that June 14, 1897, appellant was duly appointed to the office of police patrolman in Chicago, took the oath of office, entered upon his official duties as such police officer of said city, served continuously from said date as police patrolman until May 31, 1895, "when he was by said superintendent of police assigned to duty as patrol sergeant of police;" that he served as such patrol sergeant until June 19, 1897, when by order of said superintendent appellant resumed his duties as such police patrolman of said city, "and hath remained such police patrolman from thence hitherto;" that during all his said service "he has never been charged with any misconduct or dereliction of duty in his said office, nor has ever been reprimanded for misconduct or neglect of his duties as such officer;" that December 18, 1897, by direction of said superintendent appellant took the civil service examination as to his qualifications as policeman of said city, which examination was conducted by the civil service commissioners under the civil service act of Illinois, in force March 20, 1895, and was "passed" upon such examination with a standing of 99 upon a scale of 100, and number 11 upon the list of "eligibles;" that March 14, 1898, appellant's name was directed by said superintendent of police "to be dropped from the pay-roll of policemen of said city," and appellant's name was by and under such direction "dropped from said pay-

roll" and said superintendent "has caused the name of your petitioner to be omitted and excluded from the payroll of the police department of the city of Chicago, and still so causes the name of your petitioner to be omitted from said pay-roll;" that by reason of said superintendent's aforesaid action, petitioner has not been paid any portion of the salary accruing and due to him as a police officer since March 14, 1898; that he has made demand upon said city, said mayor and said superintendent that petitioner's name should be restored to the police pay-rolls of said city, to the end that he might draw his salary due him as a police officer, but that said defendants last above mentioned have respectively refused to comply with said demand, and still do refuse so to do; that his salary was $83.33 per month, less one per cent thereof deducted by the police pension board of said city.

The petition further sets out certain provisions of the civil service act and the proceedings of the civil service commissioners thereunder, which will be more specifically referred to hereafter, and alleges that petitioner for more than two years next prior to December 18, 1897, was carried upon the police pay-rolls of said city, and from month to month was duly certified by the civil service commission as a police patrolman entitled to pay as such under said civil service act, and that after he had taken the civil service examination on December 18, 1897, and had passed the same as above stated, he continued to be certified by said civil service commission upon the police pay-rolls of said city as a member of the classified civil service of said city, and to be paid by said city as an officer or employe thereof, entitled to pay for such services under said civil service act.

W. P. BLACK and A. B. CHILCOAT, attorneys for appellant.

CHARLES M. WALKER, Corporation Counsel, and ROSWELL B. MASON, Assistant Corporation Counsel, attorneys for appellees.

MR. JUSTICE WINDES delivered the opinion of the court.
On behalf of the appellees it is claimed that the appellant

is not entitled to a mandamus because the amended petition fails to show that he was certified to the appointing officer of the police department for appointment, pursuant to section 10 of the civil service act. We are of opinion that this claim is well founded, in so far as appellant relies on said act.

As is seen by the allegations of the petition, which in the consideration of the questions here presented must be taken as true, appellant had been continuously a police patrolman of the city of Chicago for more than eight years at the time of the passage of the civil service act, and was acting as such police patrolman at the time the act went into effect in Chicago. He was what, in common acceptance, when speaking of employes or officers of the city who were in service when the civil service act became operative, is known as a " holdover."

In a carefully considered opinion by Judge Tuley of the Circuit Court, reported in the Chicago Law Journal of June 8, 1900, p. 130, in Mather et al. v. Kerfoot et al., and other cases consolidated therewith, in which were involved the positions of certain inspectors and captains of police of Chicago, he says: " The civil service law did not affect the tenure of office or the power or removal of such holdovers. As to all further applicants for positions, and as to filling all vacancies in the civil service, the act was intended to have immediate effect and to that end the law requires (Sec. 3) that the commission shall classify all the offices and places of employment in such city with reference to the examinations " provided for by the act, except, however, certain offices and places mentioned in section 11 of the act. This exception does not apply to police patrolmen. An examination of the act demonstrates that Judge Tuley is correct in his statement above quoted. It is unnecessary to set out the specific provisions of the act. Section 3 also provides that " the offices and places so classified by the commission shall constitute the classified civil service of such city; and no appointments to any such offices or places shall be made except under and according to the rules hereinafter mentioned."

Section 10 of the same act provides that, " The head of the department or office in which a position classified under this act is to be filled shall notify said commission of that fact, and said commission shall certify to the appointing officer the name and address of the candidate standing high-est upon the register for the class or grade to which said position belongs. * * * The appointing officer shall notify said commission of each position to be filled sepa-rately, and shall fill such place by the appointment of the person certified to by said commission therefor, which appointment shall be on probation for a period to be fixed by said rules."

There is no allegation in the petition of any rules adopted by the commission by virtue of which appellant became an appointee under said civil service act, nor of any certifica-tion of his name by the commission to the appointing officer, nor of any appointment of appellant to the position of police patrolman under said section 10, and appellant can not therefore be said to hold his position by virtue of any certification by the civil service commission nor of any appointment based on such certification first made by said commission.

The allegations in the petition set out in the statement preceding this opinion, to the effect that appellant passed the civil service examination at the request of the superin-tendent of police, that his name was carried upon the police pay-rolls of the city for more than two years prior to his examination, that his name was certified from month to month by the civil service commission as a police patrol-man and entitled to pay as such under the civil service act, both before and after his said examination, do not show a compliance with the provisions of the civil service act above quoted. Appellant's right to his position as a police patrolman must be determined by reference to his standing as such when the civil service act came in force, and by the allegations of the petition, which show the manner in which he was retained in the police service. In fact, counsel for appellant in their brief expressly deny that said act is appli-

cable to him, except that the commission had the power to classify the offices and places of employment in the city and to recognize the persons holding them when the act came in force as in the classified civil service. This, as we have seen, is insufficient to show that he was appointed pursuant to the provisions of the act.

That part of appellees' contention that appellant was reduced from the position of patrol sergeant of police to that of patrolman, is not sustained by the record. The allegation of the petition is that on May 31, 1895, appellant was "assigned to duty as patrol sergeant of police," and on June 19, 1897, he "resumed his duties as such police patrolman and had remained such police patrolman from thence hitherto." This shows that appellant, while he was assigned to duty as patrol sergeant, was all the time a police patrolman.

Appellees also claim that appellant was discharged on March 6, 1898, and because he waited nineteen months before filing his petition for mandamus, that was a sufficient reason for the court to refuse him the relief asked. The very basis of this contention, viz., the discharge of appellant, is not sustained by the record, and therefore the authorities cited in support of the contention, which were cases of discharge, are not applicable. There is no allegation in the petition that appellant was ever discharged. On the contrary, the allegations are positive that he was appointed to the position of police patrolman in 1887, and remained such "from thence hitherto." The allegations that appellant was dropped from the pay-roll, that his name had been omitted and excluded therefrom, and that he had not been paid his salary, fall short of showing a discharge.

Inasmuch as, according to the petition, appellant has never been discharged from his position as a police patrolman, it is unnecessary to discuss the method by which he could or might be discharged. It is sufficient for the determination of this case that it appears from the allegations of the petition that appellant was duly and regularly appointed a police patrolman, was in service as such when the civil

service act came in force, that he has ever since continued such patrolman, has never been charged with any misconduct or dereliction of duty, that his name has been dropped from the police pay-rolls by direction of the police superintendent and continuously excluded therefrom, and appellant deprived of his salary, though he has demanded of the city, the mayor and superintendent of police that his name should be restored to said pay-roll, and that such demand has been refused.

It seems clear, in view of these facts and because the civil service law does not, under such facts, purport to and does not affect the right of appellant to hold his position, that the demurrer was wrongfully sustained. The judgment of the Circuit Court is therefore reversed and the cause remanded, and that court is directed to overrule the demurrer with leave to appellees to answer the petition. Reversed and remanded.