THE ATTORNEY-GENERAL, EX REL. WILLIAM M. McKENZIE, v. DANIEL ELLIOTT.

Argued June Term, 1908—Decided November 9, 1908.

1. The term of a county officer who is chosen by the board of chosen freeholders to fill a vacancy is, under the act of 1900 (*Pamph. L.,* p. 168), coterminous with the term of the board of freeholders.
2. Section 2 of the Civil Service act of 1908 (*Pamph. L.,* p. 235) refers only to officers whose term was not previously fixed by law.
3. The classified service under the Civil Service act of 1908 (*Pamph. L.,* p. 235) does not include officials with a fixed statutory term who are appointed by the board of chosen freeholders of a county.

---

On *quo warranto.*

Before Justice SWAYZE.

For the relator, *Alonzo Church* (*Joseph L. Munn* with him).

For the defendant, *John R. Hardin.*

The opinion of the court was delivered by

SWAYZE, J. This case was argued before me, by consent, by way of rehearsal, in the hope of a speedy decision, which may be promptly reviewed. I will therefore not attempt an elaborate opinion, but will indicate shortly the conclusions I have reached.

*First.* I think the election of the defendant in May, 1907, if valid, could only have been for the unexpired term of his predecessor, and not for a new term of two years from the date of his own election. The act of 1900 (*Pamph. L., p.* 168) does not expressly define the term in case of an election to fill a vacancy, but it evidently contemplates that the term of service shall end with the first Monday of December of every second year, so as to be coterminous with the term of the freeholders. The reasoning of Judge Folger in *People* v. *Potter,* 47 *N. Y.* 375, cited in relator's brief, is convincing, and is supported by the result in *People* v. *McClave,* 99 *Id.* 83.

*Second.* The question raised as to the constitutionality of the act of 1908, called the Civil Service act, is an interesting question if, as the defendant contends, the effect of the act is to give him a secure tenure during good behavior. By section 12 the civil service commission is directed to arrange offices, positions and employments in the classified service in four classes, one of which is called the exempt class, in which appointments may be made without examination. Two other classes are called, respectively, competitive and non-competitive. In these classes appointments can only be made after an examination, and section 2 enacts that officers, clerks and employes now in the employ of the state or any municipality adopting the act, shall continue to hold their offices or employments and shall not be removed therefrom except after a

written statement of the reasons for removal and an opportunity to make a written answer, from which it may fairly be inferred that a hearing upon the charges is contemplated. The right of an officer to continue in his place indefinitely depends therefore upon whether he comes within the competitive or non-competitive class of the classified service, or whether he comes within the exempt class, and since the commission is authorized to change the classification from time to time as it deems proper, the necessary result is that the indefinite continuance in office of one, whose term has been definitely fixed by act of the legislature, is committed to the decision of the commission, which may vary it as it sees fit. Among the officers embraced in the classified service are the Vice Chancellors, whose term is fixed by the statute creating the office at seven years, co-extensive with the term of the Chancellor and justices of the Supreme Court as fixed by the constitution. If the defendant's construction is correct, the commission is empowered to change this term of the Vice Chancellors from seven years to a tenure during good behavior, while the Chancellor, who appoints them, and by the constitution is the Court of Chancery, can only hold for seven years. Such a conclusion is sufficiently startling, and if I felt constrained to adopt the construction contended for by the defendant, I should entertain grave doubts as to the constitutionality of the act. The defendant's brief concedes that the act is unconstitutional so far as it affects the Vice Chancellors, and this concession seems necessary if the defendant's construction is adopted. A construction which leads to declaring an act unconstitutional ought not to be adopted if it can be avoided. It is the duty of the courts to adopt such a construction as will sustain the constitutionality of an act of the legislature if it can be done, without doing violence to the language of the act. I think such a construction is possible. The act deals, first, with removals from, and then with appointments to, office. I have quoted section 2, which relates to removals. I think this section refers only to officers whose term was not previously fixed by law. It was this class which needed the protection of the act in order to secure them

against removal for political causes. The word "removal" naturally applies to one whose term is indefinite; it does not naturally connote the case of an officer whose statutory term has actually expired. In such a case there is a vacancy, and no removal is necessary. The distinction between removing an officer and filling an existing vacancy not due to removal but to expiration of term, is a natural one and makes a reasonable basis for classification. I fail to see how any provisions of the act prohibiting removals from office can operate to extend a term which has already been fixed by act of the legislature. I conclude, therefore, that Dr. Elliott's term was not extended by the act of 1908. The result is that there should be judgment of ouster, which may be entered February 16th.

The pleadings raise the further question of the title of Dr. McKenzie to the office, and it is therefore incumbent upon the court to determine "the very right to the office," to use the language of the *Quo Warranto* act. This depends upon somewhat different considerations arising out of the sections regulating appointments. It is argued on his behalf that he is the head of a department and therefore within the unclassified service. I should have some difficulty in holding that an officer whose duties are similar to those of a coroner at common law, who has no office in any county building, and no clerical force under him, is a head of a department within the meaning of the statute. It seems more probable that "heads of departments" in section 11 are the same class of officials as "appointing officers and heads of departments" in section 17, and "the head of a department, office or institution" in section 21. In those sections the words evidently refer to some officer who has a clerical or other force under him, appointed by him. It is, however, unnecessary for me to dwell upon this, since I think other language of the act clearly indicates that the classified service does not include officials with a fixed statutory term who are appointed by the board of chosen freeholders. The object of the act is to secure a permanent tenure to officers coming within its provisions, and what I have already said applies as forcibly to the case of appointments of

new officers as to the removal of old ones.   If this construction were adopted, the terms would depend on the will of the civil service commission, and their resolutions would operate to repeal legislative enactments.   Such a construction is not required.   The section which provides the method of appointment in the classified service (section 21) enacts that "the head of a department, office or institution in which a position classified under this act is to be filled shall notify said commission of that fact;" the commission is then to certify three candidates.   The board of chosen freeholders is not a mere appointing body; it is the county legislature; the Civil Service act itself is in force in Essex county only by virtue of its ordinance.   By no stretch of language can such a legislative body be called a "head of a department, office or institution." These words naturally import an officer of an administrative character; they are quite inappropriate terms to designate a body of a legislative character.

The construction I have thus adopted carries out the desirable end of protecting the clerical force in our public offices from removal for political causes; it tends to secure appointments for merit and fitness—the declared object of the act— in cases where there is a probability of determining that merit and fitness by means of competitive or non-competitive examinations; it avoids the absurdity of giving the Vice Chancellors, at the whim of the commission, a more secure tenure than the people have seen fit to give the Chancellor and the justices of this court, and it steers clear of the serious constitutional objections to the act which the other construction would involve.

Let judgment be entered on February 16th that the relator is entitled to the office.