## CONSTRUCTION OF CIVIL SERVICE PROVISIONS.

Superior Court of Cincinnati.

STATE, EX REL BERTRAM W. JENKINS ET AL, v. FRED C. SCHNEL-
LER, CLERK OF COUNCIL.

Decided, January 20, 1914.

*Civil Service—Went Into Effect, as to Incumbents of Certain Offices,*
*When—Incumbents Whose Statutory Terms Expired December 31,*
*1913, Not Continued in Office.*

1. The civil service act of May 10th, 1913 (103 Ohio Laws, 698), in so far
   as it relates to incumbents of offices and places mentioned in the
   third paragraph of Section 10 thereof, went into effect January
   1st, 1914.
2. The terms of such public offices and positions as are fixed by statute,
   remain unchanged by the civil service act of May 10th, 1913, and
   an incumbent on January 1st, 1914, of such office or position, while
   protected from removal, suspension, reduction or transfer except
   for cause as therein provided, is not thereby given a new term of
   office, nor is his existing term thereby lengthened or extended.
3. Incumbents of offices and positions whose statutory terms expired
   December 31st, 1913, are not continued in office or position there-
   after by the civil service act aforesaid.

*Moulinier, Bettman & Hunt,* for relators.

*Walter M. Schoenle,* City Solicitor, and *Charles A. Groom,*
Assistant City Solicitor, contra.

PUGH, J.

On January 1st, 1912, the relators, Bertram W. Jenkins, James
P. Kelly, Joseph McClorey, Myrtle Burke, Henry Vanderhaar,
Theodore Hollenbeck, George Giesting, Charles O'Brien, Thomas
Meehan, Fred Disser and Ada Auberger were elected by the
council of the city of Cincinnati to the following positions re-
spectively: record and certificate clerk, sergeant-at-arms, dedi-
cation clerk, general clerk, notice record clerk, notice clerk, no-
tice clerk, notice clerk, notice clerk, draughtsman and clerk-
stenographer.

This election was held under authority of General Code, Section 4210, which provides as follows:

"Within ten days from the commencement of their term, the members of council shall elect a president *pro tem*, a clerk, and such other employees of council as may be necessary, and fix their duties, bonds and compensation. The officers and employees of council shall serve for two years, but may be removed at any time for cause, at a regular meeting by a vote of two-thirds of the members elected to council."

On April 28th, 1913, the General Assembly of this state passed the statute, commonly known as the civil service act, and it was approved by the Governor May 5th, 1913, and filed in the office of the Secretary of State, May 10th, 1913 (103 Ohio Laws, 698, 713).

On January 1st, 1914, the city council, the members of which had been elected on November 4th, 1913, acting on the assumption that the terms of office of the aforesaid relators had expired, elected certain other persons to the positions which the relators had held since January 1st, 1912.

The relators insist that the civil service act aforesaid continued them after January 1st, 1914, in possession of the various positions to which they had been elected two years before, and that, subject to the non-competitive examination provided for in the third paragraph of Section 10 of said act, they are the legal incumbents of said positions; they claim, and it is not denied, that the defendant, Fred C. Schneller, in his character of clerk of council, refuses to recognize them as the legal incumbents of said positions and refuses to allow them to perform the duties of their positions, wherefore they now apply to this court for a writ of mandamus requiring the said defendant to recognize them as legal holders of the various positions above named, and to permit them to perform their public duties as such.

At the request of all concerned, the court passes over preliminary matters and comes at once to the issues arising under the civil service act. It will be assumed, therefore, without discussion, that mandamus is the proper form of action, that the action has been properly brought and that the writ can issue to

the clerk of council to compel him to recognize the relators as prayed for in the petition.

The civil service act begins with the following sweeping declaration of law:

"*Section 1. Definition 1.* The term 'civil service' includes all officers and positions of trust or employment, including mechanics, artisans and laborers in the service of the state and the counties, cities and city school districts thereof."

Section 8 of the act provides as follows:

"The civil service of the state of Ohio and the counties, cities and city school districts thereof shall be divided into the unclassified service and the classified service.

"(a) The unclassified service shall comprise the following positions which shall not be included in the classified service, except as otherwise provided in Section 19 hereof."

And thereupon follows a specification, in ten numbered paragraphs, of the offices and positions included in the unclassified service; subdivision (b) of the section (8) follows in this language:

"(b) The classified service shall comprise all persons in the employ of the state, the counties, cities, and city school districts thereof, not specifically included in the unclassified service, to be designated as the competitive class."

Without further quotation it may be said at once that the classified service, as defined and provided for in the civil service act, includes all those public offices, positions and employments to which appointment or election is made to depend on merit as determined by examination—and, with few exceptions, competitive examination, and from which incumbents can not be discharged, suspended or reduced except for cause, and the unclassified service includes those offices, positions and employments to which appointments may be made or the incumbents elected at the discretion of the appointing officer or board and from which the incumbent may be removed, suspended or reduced at the pleasure of some superior board or officer.

It is apparent that by this legislation the General Assembly intended to create a new and comprehensive code of laws governing the appointment to and removal from public office and employment. Civil service laws were already in existence before January 1st, 1914, but they were more or less fragmentary and limited in their application and in effect they have all been swept away by the repeals provided for in the present act. The civil service act of May 5th, 1913, is the first statute which has included and made uniform and equal provision for practically every public employment except those to which the incumbent is elected by popular vote. While in form the entire civil service, state, county, municipal and school, has been divided by Section 8 of the act into two classes, it is evident that what has really been done by this law consists in the establishment of a general system whereby appointments to public service are made to depend on merit as determined by competitive examinations and removals have been forbidden except for reasonable cause. Some employments and positions are of such kind that the special personal qualities which the incumbents must possess in order to render the best service are those which can not be ascertained or measured by competitive examinations, others are of a confidential nature, and still others have already been provided for by laws which are satisfactory and at present require no modification. These are all exceptional cases for which special reasons exist why they should be taken out of the general rule, and compared with the immense number of public offices and positions that must now be filled by competitive examinations, are but few in number. There is also the class of offices to which incumbents are elected by popular vote and which therefore have no place in the civil service system. Elective offices and the exceptional cases referred to are grouped together in the new law and designated as the unclassified service, but it is apparent that they do not really constitute a class by themselves and are nothing more than exceptions to the general rule.

Exceptions such as these, exist in the nature of things and are not merely artificial, and hence appear in every civil service

system that is devised. They constitute a weak spot in the system, the place where abuses are likely to creep in, and the General Assembly of this state recognizing the danger, has taken the precaution to designate specifically the offices and employments which shall be treated as exceptions to the general rule, and has not left this to the discretion of any board or officer. The civil service commission itself has no authority under this statute to determine what offices and positions shall be excepted from the merit class. In some civil service systems the commission or board in charge of the examinations and certifications is given power to designate what particular employments shall be included in the unclassified service and what not, but in the Ohio act this is not left to the discretion of anyone. Municipal civil service commissions are authorized by Section 19 to place in the classified or merit service offices and employments additional to those already designated by the Legislature itself in a previous part of the statute (Section 8) but no corresponding power to put additional offices or employments in the unclassified or non-merit class has anywhere been bestowed upon them.

The civil service act, as already stated, having been passed a few days before, was filed in the office of the Secretary of State, May 10th, 1913 (103 Ohio Laws, 713). . Whether, as asserted in argument, the municipal civil service commission as an existing board under Section 19 could organize, formulate rules, hold examinations, prepare eligible lists and the like, at any time after the expiration of the referendum period (August 10th, 1913) and before January 1st, 1914, need not be decided in this case, but the court is satisfied that all the provisions of this statute relating to appointments, removals, suspensions, promotions and reductions of applicants or employees went into effect on January 1st, 1914, and not at any earlier date. Section 2 reads as follows:

"*Method of Appointment.* On and after January 1st, 1914, appointments to and promotions in the civil service of this state and the counties, cities and city school districts thereof shall be made only according to merit and fitness to be ascertained as far as practicable by examination which, as far as practicable

shall be competitive; and on and after January 1st, 1914, no person shall be appointed, removed, transferred, laid off, suspended, reinstated, promoted or reduced as an officer or employee in the civil service under the government of this state, the counties, cities and city school districts thereof, in any manner or by any means other than those prescribed in this act.''

This section, in the opinion of the court, fixes the date at which the law took effect, and with the exceptions already mentioned establishes the date to which all its provisions must be referred.

The terms of office for which the relators were elected by council are fixed by General Code, Section 4210, at two years, and expired therefore on December 31st, 1913. About ten o'clock, A. M., January 1st, 1914, the members of the city council elected November 4th, 1913, met and organized and proceeded at once to elect a clerk and assistant clerk and successors to the relators in the various subordinate positions held by them under the council.

The civil service act, as stated, had been passed during the preceding year and the relators contend that, under the third paragraph of Section 10 of that statute, their terms did not end but that they were thereby continued indefinitely in their positions as employees of council, subject to their passing non-competitive examinations as provided in said section, and that, therefore, they could be removed only for cause.

The third paragraph of Section 10 is as follows:

''The incumbents of all offices and places in the competitive classified service, except those holding their positions under existing civil service laws, shall, whenever the commission shall require, and within twelve months after the rules adopted by the commission go into effect, be subject to non-competitive examinations as a condition of continuing in the service. Reasonable notice of all such non-competitive examinations shall be given in such manner as the commission may require and all such non-competitive examinations shall conform to those of the competitive service.''

There is nothing whatever in this clause nor in Section 2, quoted above, to indicate that, when an incumbent has been ap-

pointed or elected to a position .in the public service the term of which is fixed by statute or indeed in any legal way, his term of office shall be extended by the civil service act to any longer period of time than that for which he was originally appointed or elected. A careful reading of the act discloses no such intention on the part of the General Assembly. There is but one place in the statute where there is any reference to any such matter, *i. e.,* in Section 17, which reads thus:

"No person shall be discharged from the classified service, reduced in pay or position, laid off, suspended or otherwise discriminated against by the appointing officer for religious or political reasons. In all cases of discharge, lay off, reduction, or suspension of a subordinate, *whether appointed for a definite term or otherwise,* the appointing officer shall furnish the subordinate discharged, laid off, reduced or suspended with a copy of the order of the discharge," etc.

The above italicized clause, which is the only reference in the act to definite terms, indicates that terms of office for specified periods of time may continue to exist under the civil service act the same as before. While the definite term continues, whether the incumbent was originally removable at the pleasure of the appointing officer or only for cause, after the act comes into effect, the incumbent is protected by Section 2, above quoted, and the subsequent provisions. He can no longer be removed, transferred, promoted or suspended except as provided by the new statute, and, if he pass the non-competitive examination mentioned in the third paragraph of section he may continue in office the same as before. But when the period of time for which he was originally elected or appointed expires he must make way for his successor, the same as before. In such case, he is not "removed, transferred, laid off, suspended * * * or reduced," which are the only risks from which incumbents are protected by the new law, but simply goes out because his term has expired.

The civil service act does not entirely repeal those statutes, which like General Code, Section 4210, prescribe fixed or definite terms of office. So much of this section as is inconsistent with

the provisions of the new law is repealed or rather amended, but no more. The method of electing these employees is changed inasmuch as only persons on the eligible list furnished by the municipal civil service commission can be elected, but the clause of the statute which gives the appointing power to council remains unaffected and the term of two years prescribed therein as the term of office is still the law.

It is a well established principle of law that repeals by implication are not favored. When a statute is enacted upon a subject which has already been dealt with by an existing law, it would seem as a matter of course that the General Assembly would provide in the new act for the repeal of the previous one if it was intended to repeal it, and failure to repeal the existing act naturally creates a strong presumption that it was not intended to be repealed. None the less there are instances where the later statute has not in express terms repealed the earlier one and yet is so inconsistent with it or part of it that both can not stand. In such cases the later law repeals the prior one to the extent only, however, to which the inconsistency exists, and this we call repeal by implication. If, however, in such case by reasonable construction the terms of the two statutes can be reconciled and both be preserved, it is the duty of the courts to do so. Applying this rule to the case before the court no serious difficulty is encountered in upholding both statutes. Section 32 provides for the repeal of a number of sections of the General Code, all of which concern previous civil service systems in this state but in nowise relate to terms of office or employment. The same section also repeals "all other acts or parts of acts inconsistent with the provisions of this act," but there is nothing inconsistent between the provisions of the civil service act and statutes fixing definite periods of time during which appointees shall hold certain offices or perform certain duties. Every provision of the civil service act would apply to the incumbent of such an office, without regard to how he was appointed, but his term of office would not be lengthened.

The question we have been discussing has arisen under civil service statutes of other states, and, although these differ in

many particulars from the Ohio law, they are alike in this respect. In deciding a similar controversy under the laws of California, the appellate court of that state in *Rodrigue* v. *Rogers,* 4 Cal. App., 257, speaking of the effect of the expiration of the term of the complainant after the civil service law had come into operation, said (p. 261):

"When that time expired it is difficult to see why his employment did not end. He was not discharged in violation of any provision of the civil service provisions of the charter, but the term of his employment of office expired by the law, of its creation."

The same has been declared to be the law in Massachusetts (*Smith* v. *Mayor of Haverhill,* 187 Mass., 323; *Robertson* v. *Coughlin,* 196 Mass., 539; *Lahar* v. *Eldridge,* 190 Mass., 504), and in Illinois (*McNeill* v. *City of Chicago,* 93 Ill. App., 124; *Stoll* v. *City of Chicago,* 98 Ill. App., 105); in Texas (*City of Houston* v. *Mahoney,* 36 Tex. Civ. App., 45); in New Jersey (*McKenzie* v. *Elliott,* 72 Atl. Rep., 47 [N.J.]), and in New York (*Matter of Tiffany,* 179 N. Y., 445).

If it were conceded that the civil service act by its provisions converted the terms of office of all time incumbents into civil service positions which the incumbent would continue to hold indefinitely thereafter, subject to the non-competitive examination mentioned in Section 10, the relators in this case would find their status in nowise improved. The two year terms for which they were elected on January 1st, 1912, expired at midnight, December 31st, 1913, and when the new law took effect January 1st, 1914, they were not incumbents of any public office or position at all and the section (10) invoked could be of no assistance to them.

It is suggested by way of avoidance of this difficulty that, under the law of Ohio, the relators held over until their successors were appointed and qualified. The successors of the relators, as appears from the minutes of the city council, were elected at a session of the council which began at 10 A. M., January 1st, 1914. These were all emergency appointments, made in conformity to the new act and good only until notice could be given the civil

service commissioners to furnish an eligible list from which to select more permanent employees. From midnight, December 31st, 1913, up to some time before noon on January 1st, 1914, the relators assert they were the lawful incumbents of the positions under the rule which extends a term of office beyond the chronological point at which it expires up to the exact moment of time at which successor is elected and qualified.

The Constitution of Ohio, Article XVII, Section 2, provides that elective officers shall hold over after their terms have expired until their successors have been elected and qualified, and General Code, Section 8, makes the same provision as to all those holding offices of public trust, and it is claimed in argument, supported with some show of authority (see *McQuillin on Municipal Corporations*, Section 487), that the same rule applies to all positions of public employment. Even if this claim be well founded, which the court is by no means inclined to concede, the real question would still remain, namely, did the General Assembly intend the civil service act to apply, in the respect claimed, to a group of subordinate, clerical, and ministerial positions of which, under the rule of law stated, the former holders remained incumbents during the half day or thereabout necessary for the election of their successors? Were the relators, under these circumstances, "incumbents" as meant by the word used in the third paragraph of Section 10 of the new law?

The court is of the opinion that the relators were not such incumbents. Time is not reckoned in such matters hour by hour by the clock, but day by day, month by month, or year by year according as the term is designated in the statute creating it. As a matter of public convenience and sometimes of necessity, incumbents of positions upon whom public duties of importance are imposed must hold over until some one can be legally assigned to take over such duties, but this rule was not intended for the benefit of public employees and officeholders. It was never intended that the officeholder whose statutory term had expired should be given another term of office because a new law which made special provision for incumbents of unexpired terms happened to come into effect for the first time during

the few hours during which he held over until his successor could be appointed. This view of the matter is supported by the reasoning of the decisions already cited and in several of them it is expressly so decided: *Smith* v. *Mayor of Haverhill,* 187 Mass., 323; *Robertson* v. *Coughlin,* 196 Mass., 539; *Lahar* v. *Eldridge,* 190 Mass., 504; *Rodrigue* v. *Rogers,* 4 Cal. App., 257; *City of Houston* v. *Mahoney,* 36 Tex. Civ. App., 45; *Stoll* v. *City of Chicago,* 98 Ill. App., 105; *McNeill* v. *City of Chicago,* 93 Ill. App., 124; *McKenzie* v. *Elliott,* 72 Atl. Rep., 47 (N.J); *Matter of Tiffany,* 179 N. Y., 455.

From what has already been said, it is apparent that the application for a writ of mandamus must be denied and the case dismissed, and it will be so ordered.

In deciding this case it has not been necessary to pass on the constitutionality of the section of the civil service act challenged by counsel for the defendant. It is a well established rule that a court shall accept without question the constitutionality of an act of the General Assembly unless it is essential to the determination of the case before it to pass upon its validity. Since the present action was begun, another suit involving the constitutionality of the civil service act has been filed in this court and it is probable that there will be a number of such suits filed hereafter. The court deems it improper therefor under the circumstances to undertake to decide a question not necessary to a final determination of the case at bar.