JOSEPH F. TOOMEY, RELATOR, v. THOMAS H. McCAFFREY.
RESPONDENT.

Submitted January 31, 1936—Decided May 16, 1936.

Before BROGAN, CHIEF JUSTICE, and Justices LLOYD and
DONGES.

For the relator, *Lionel Isaacs.*

For the respondent, *Irwin Rubenstein.*

BROGAN, CHIEF JUSTICE. This is an action in *quo warranto,* the relator having filed an information under the fourth section of the statute. The contest between the relator and the respondent is for the office of comptroller of the town of West New York, Hudson county, New Jersey.

An agreed state of facts has been filed and from it we extract the following pertinent data:

The relator claims he is entitled to the office of comptroller of West New York. On May 26th, 1931, the governing body of that town, *by resolution,* created the office of comptroller as a subordinate branch of the department of revenue and finance, and fixed the salary thereto attaching. The relator was appointed to the post, without term, in the same resolution that created it. He qualified accord-

ing to law and held the office until May 21st, 1935, at which time he was displaced by the respondent, who was appointed by resolution of that date.

The town of West New York was incorporated under the statute of 1895, "An act for the formation, establishment and government of towns (*Comp. Stat., p.* 5518)," but in 1931, the people of West New York adopted the commission form of government, known also as the Walsh act (chapter 221. *Pamph. L.* 1911), and since the month of May, in that year, the municipal affairs have been conducted under that governmental plan. The relator's claim to tenure in office arises out of his status as an honorably discharged soldier of the United States army.

The question for determination is three-fold—(1) whether the relator acquired tenure under the Veterans act (chapter 14, *Pamph. L.* 1907); (2) (a) whether the resolution appointing the relator in 1931, created the office of comptroller for a term of three years and, if so, was the said office created legally for that period or for any fixed term, or (b) was the office of comptroller legally created and relator appointed for a term not fixed by law so as to give the relator the benefit of the Veterans act; (3) whether the failure of the relator to file his information until three months after he was ousted, convicts him of laches.

Our first inquiry must needs be whether the office itself, which is the subject of this contest, is legally in existence, since if it is not, the relator can have no legitimate claim to it. The Town act of 1895 (*supra*) exhibits no authority for the creation of the office of comptroller. Reference, however, is made to chapter 147, *Pamph. L.* 1911 (a supplement to the Town act), which makes provision for the *election* of a comptroller for a definite term. But this supplemental statute is of no consequence in this matter since by its provisions it remains inoperative (section 5) until adopted by the voters of the municipality which, in this instance, never took place. However, when the form of government was changed by the adoption of the Walsh act, the power to create the office in question and the authority to appoint a comp-

troller could not be questioned. Walsh act, *supra,* section 4. But was the office ever created in the manner required by law so as to give it complete legal efficacy? We think not. It is clear, in our view of the law, that municipal offices cannot be created by *resolution.* An office must be created by ordinance. In this instance, at the time the governing body attempted to create the office of comptroller, the Home Rule act (*Pamph. L.* 1917, *ch.* 152) had been in effect for some years, and was controlling, wherever applicable, as to municipal action.

That certain of its provisions were applicable and, consequently controlling, is clear. By the fourteenth article of the Home Rule act (*supra*), the governing body is empowered to pass ordinances to manage, regulate and control the finances and property of the municipality (Cf. statute, *supra,* subdivision "a"). The office of comptroller is concerned with such management and control. There is a further regulation (subdivision "c") that the governing body shall have power to enact ordinances to provide for the employment and compensation of such officials and employes, in addition to those provided for by statute, as may be deemed necessary for the proper and efficient conduct of the affairs of the municipality. Our deduction is that in order to create the office of comptroller it was necessary to proceed by ordinance, and that municipal action of the same character and quality was required even to fix the salary of officers and employes not provided for by statute.

Adverting to article 14 of the act concerning municipalities (Home Rule act), it will be noted that this article is headed "general regulations." That being so, it follows that the indubitable intention of the legislature was that the matters and things therein comprehended should be done in the mode therein set forth and not otherwise. Therefore the office of comptroller could not be created nor could the relator be appointed to the office, nor could the salary thereof be fixed by resolution.

Now a relator, under section 4 of the *Quo Warranto* act, must, if he would succeed, prove his right to the office and

the validity of his title thereto. The weakness of the title of the incumbent is not the least benefit to him. *Manahan* v. *Walls,* 64 *N. J. L.* 465; *Dunham* v. *Bright,* 85 *Id.* 391; *Florey* v. *Lanning,* 90 *Id.* 12; *McCarthy* v. *Waller,* 108 *Id.* 282, 285.

The question might arise in the mind of some, though it is not raised in the briefs of either side, whether the relator might not, as a *de facto* officer, have acquired rights to this office. That consideration immediately raises the query as to whether there can be a *de facto* officer when a *de jure* office does not exist. It has been held that there cannot legally be a *de facto* officer unless there is an office *de jure.* *Norton* v. *Shelby Co.,* 118 *U. S.* 425, 441, 442; *Oakland Paving Co.* v. *Donovan,* 19 *Cal. App.* 488; *New Orleans Board of Public Utilities* v. *New Orleans Railway and Light Co.,* 145 *La.* 308, and a contrary view is expressed in *Albuquerque Water Supply Co.,* 174 *Pac. Rep.* 217, 223; *State* v. *Carroll,* 38 *Conn.* 449; *Lang* v. *Bayonne,* 74 *N. J. L.* 455, which last case was in part overruled in *Hyman* v. *Long Branch Kennel Club, Inc.,* 115 *Id.* 124. We find it unnecessary to pursue this inquiry since the relator's claim rests on no such theory.

The first question is whether the Veterans act affords protection to the relator in the office to which he was named in 1931, and from which he was dismissed in 1935. This act gives tenure during good behavior to soldiers, sailors and marines, honorably discharged from the United States service, who hold, or are appointed to, a position or office in the state government or any of its subdivisions, whose term is not fixed by law. We conclude that since the office itself never had any legal existence that the relator therefore was not, under the statute, a person holding an office or position as defined by the act. The statute in question clearly embraced those who hold an office or position that legally existed.

As to the second question, we conclude that the resolution of May 26th, 1931, appointing the relator, was ineffectual to accomplish either the creation of the office or the appointment of the relator.

368

The third question, as to whether or not relator was in laches by failure to file an information until three months after he was superseded, becomes immaterial.

Judgment for the respondent, with costs.