# DECEMBER, 1937

## CITY OF DALLAS ET AL. v. C. M. McDONALD ET AL.

No. 6766. Decided November 4, 1936.
Rehearing granted (original opinion withdrawn) March 31, 1937.
Second rehearing overruled July 21, 1937.
Third rehearing overruled December 1, 1937.
(98 S. W., 2d Series, 167; 103 S. W., 2d Series, 725; 107 S. W., 2d Series, 987.)

300

*Hugh S. Grady, H. P. Kucera, W. Hughes Knight, A. J. Thuss,* and *J. Manuel Hoppenstein,* all of Dallas, for plaintiff in error.

Before a person can recover the salary of an office from which he claims to have been ousted it is incumbent upon such person to allege and prove that such office was legally created and that he legally held such office and had been unlawfully removed therefrom, and having failed to prove that the offices, which defendants in error claimed they had been ousted from, had been created by ordinance as required by the city charter, they were nothing more than de facto officers and were not entitled to recover any compensation beyond the time they actually served. City of San Antonio v. Coultress, 169 S. W. 917; People v. Coffin, 282 Ill. 599, 119 N. E. 54; Bullis v. City of Chicago, 235 Ill. 472, 85 N. E. 614.

The chief of police of a city and its civil service board provided in its charter perform governmental functions and as such their wrongful acts do not render the city financially liable for such acts, and if the defendants in error were unlawfully discharged, then such wrongful act of the chief of police and the civil service board does not render the city, "the paying power," financially liable for its acts because they acted in a governmental capacity. State v. Kansas City, 8 S. W. (2d) 620; Harrison v. City of Columbus, 44 Texas 418; City of Wichita Falls

v. Robison, 121 Texas 133, 46 S. W. (2d) 965; Smith v. Farrell, 44 S. W. (2d) 962.

*Claud C. Westerfeld* and *Harold Young*, both of Dallas, for defendants in error.

*James E. Kilday*, *R. R. Lewis*, and *Walter E. Boyd*, all of Houston, filed briefs as amici curiae.

MR. JUDGE GERMAN, of the Commission of Appeals, delivered the opinion for the Court.

### ON MOTION FOR REHEARING.

Upon careful reconsideration we have concluded that we were in error in affirming the judgment of the Court of Civil Appeals. The opinion heretofore rendered in this case on November 4, 1936, reported in 98 S. W. (2d) 167, is hereby withdrawn, and the following shall constitute the opinion of the Court.

Defendants in error, C. M. McDonald and five others, who will be referred to herein as plaintiffs, instituted this suit in the district court of Dallas County against the City of Dallas and its governing officials, as well as the civil service commission, seeking mandamus to compel their reinstatement as policemen in the police department of the City of Dallas. The suit was essentially one for mandamus, but there was an alternative plea that plaintiffs be entitled to recover their salaries for unexpired terms of their respective offices. Judgment was against them in the trial court, which judgment was reversed by the Court of Civil Appeals and judgment rendered in their favor. 69 S. W. (2d) 175.

The material allegations relied upon by plaintiffs are set forth in the opinion of the Court of Civil Appeals in this language:

"For cause of action, appellants allege, in substance, that, prior to the adoption of the present charter of the City of Dallas (1931), each was duly appointed and qualified as a regular policeman of the city, and had been actively and continuously engaged as such officer from nine to fourteen years, under the existing provisions of said charter (Article 14, Sec. 34), authorizing their tenure in office, during good behavior, and removal for cause; that on May 1, 1931, the city charter was amended, creating a civil service board of three members, to promulgate rules and regulations governing the conduct and efficiency of

civil service employees, providing additional grounds for removal, and creating a special tribunal to discharge them; that the governing authorities, without fault on appellants' part and without assigning any reason therefor, illegally discharged them, have persistently refused to allow them to perform any duties as such officers, and the City of Dallas has declined to pay their salaries for the unexpired terms of their offices. Appellants further alleged that they secured their positions by appointment from the city manager, acting under the provisions of the present charter, and can only be removed from office by charges duly presented and a trial before the tribunal provided by said charter amendments; that no such charges have been preferred, no such trial had, nor have they been guilty of any misconduct which would justify their removal."

■ In the case of Oscar F. Holcombe et al. v. E. F. Grota, 129 Texas 100, 102 S. W. (2d) 1041, decided March 3, 1937, we have held that one who seeks by mandamus to be reinstated to a municipal office, and who claims the rights and emoluments of such office, must show that the office legally existed and that he is lawfully entitled to hold it and enjoy the emoluments of same. In addition to the authorities referred to in that opinion, we here note the additional case of Burley et al. v. Barber, Mayor, et al., 286 Ill. App. 486, 3 N. E. (2d) 939, which we think clearly states the applicable rule. After a reference to the case of Moon v. Mayor of City of Champaign, 214 Ill. 40, 73 N. E. 408, the court says:

"As is said in that case: It is not sufficient to entitle appellants to the writ that it should appear from the petition merely that petitioners were de facto police officers. Petitioners assert the right based upon their alleged official character to exercise the duties and authority of police officers and to receive the salary therefor. 'The rule is, that when one claims rights as an officer by virtue of his office, it must appear that the office legally exists and that he is lawfully entitled to hold the same and exercise the duties and powers thereof. He must show that he is an officer de jure. It is not enough that as to the public or as to third persons he is acting in an official character, and that as to them his acts in his official capacity have the force and virtue of the acts of an officer de jure.'

"It was therefore essential that the petition should show that the petitioners were officers de jure, and not merely de facto policemen. It does not appear from the petition that the office which appellants claim the right to hold and exercise had or has any legal existence."

In the present case we think it appears that plaintiffs not only failed to prove the existence of the offices in which they sought to be reinstated, but that it affirmatively appears that such offices have never been legally created by the legislative authority of the City of Dallas. Section 44 of the charter of the City of Dallas creates the police department, which is placed under the control of the city manager. Section 66 of the charter provides:

"The police department shall be composed of the chief of police and of such other officers, patrolmen and employees as the city manager may determine."

■ It will be noted that this section does not empower the city manager to create offices. That is primarily a legislative function, and even if such power could be conferred by the charter upon an administrative officer (which we need not decide), it is certain that it should be conferred in express and definite language. All that this section purports to do is to authorize the city manager to determine what personnel shall man the police department, such as officers, patrolmen and employees, and the number thereof. One of the fundamental purposes of the provision for a city manager was to create a salutary check upon the legislative department in the creation of offices and places of emolument. It is further obvious, however, that the power granted to the city manager was not in any manner to take from the power of the city council to create offices within the police department, but was merely intended as a restraint upon the exercise of such power. This is apparent from the further provisions of Section 44 of the charter as follows:

"The council shall have power by *ordinance* to establish other departments and *offices*. The council may discontinue any department or office established by ordinance and may prescribe, combine, distribute or abolish the functions and duties of departments and offices, but no function or duty assigned by this charter amendment to a particular department or office shall be abolished or assigned to any other department or office; provided, that the council may, if it deems it advisable, consolidate into one department not more than two of the departments hereby established. No administrative department or office created by ordinance shall be established or discontinued, and no consolidation as hereinbefore provided shall be made *until the recommendation of the city manager thereon shall have first been heard by the council.*" (Emphasis ours.)

Thus it is seen that the power to create offices within the

police department is expressly conferred on the city council, but is to be exercised when the city manager "may determine" as to the necessary personnel of such department, and on his recommendation. It is especially declared by the charter that offices are to be created by ordinance. This negatives the idea that they may be created by the city manager. In the present case the pleadings referred to plaintiffs as officers and as holding offices. Section 69 of the charter provides as follows:

"The officers and privates constituting the police department of the City of Dallas shall be and they are hereby invested with all the power and authority given to them as peace officers under the laws of the State of Texas in taking cognizance of, and in enforcing the criminal laws of the State and the ordinances and regulations of the city within the limits of the city, and it shall be the duty of each such officer and private to use his best endeavors to prevent the commission within the city of offenses against the laws of said State and against the ordinances and regulations of said city; to observe and enforce all such laws, ordinances and regulations; to detect and arrest offenders against the same; to preserve the good order of the city and to secure the inhabitants thereof from violence, and the property therein from injury. Such policemen shall execute any criminal warrant or warrants of arrest, or any writ, subpoenas or other process that may be placed in their hands by the duly constituted authorities of the city."

There was no effort made by plaintiffs to prove any ordinance of the city council of the City of Dallas creating any offices of policemen within the police department, or prescribing the number of police officers or patrolmen. On the contrary, it is obvious that plaintiffs relied upon the assumption that the city manager could by making appointments bring into existence as many offices as he might from time to time determine were proper and necessary. Each of the plaintiffs relied upon an instrument designated "Warrant of Appointment" as the source of his authority, and as constituting evidence of the legal existence of the office sought to be recovered by him. These warrants of appointment among other things contain the following:

"KNOW ALL MEN BY THESE PRESENTS: That I, John N. Edy, City Manager of the City of Dallas, do, in conformity with the Charter of the City of Dallas and the laws of the State of Texas, hereby, on behalf and in the name of the City of Dallas, appoint (Name of appointee) to the position of Police Officer in the Police Department of the City of Dallas for the fiscal year be-

ginning October 1st, 1932, and ending September 30th, 12 P. M., 1933, and empower him to discharge all and singular the duties of said position according to law and subject to the Civil Service provisions of the City Charter and other provisions thereof and of the ordinances of the City of Dallas and the laws of the State of Texas."

■ We think it affirmatively appears, therefore, that plaintiffs failed to show that the respective offices claimed by them were ever legally brought into existence, and therefore no mandamus could issue requiring their reinstatement to such positions. Courts will not undertake to do the anomalous thing of requiring reinstatement into an office which does not legally exist. There being no office de jure, plaintiffs were not officers de facto in the sense that they could recover emoluments for unexpired terms. There could be no unexpired terms of offices having no legal existence.

The former judgment entered in this case is set aside, the judgment of the Court of Civil Appeals is reversed, and the judgment of the district court is affirmed.

Opinion adopted by the Supreme Court March 31, 1937.

### ON SECOND MOTION FOR REHEARING.

Defendants in error have filed an able motion for rehearing, urging a review of certain questions not fully discussed in original opinion. They were not discussed because we were of the opinion that the question on which the decision was based disposed of the case. So far as the right of defendants in error to be restored to office and to recover emoluments of office was concerned the former decision settled the case. It is urged, however, that a cause of action for reinstatement in the Classified Service of the City of Dallas was sufficiently alleged and proved.

The charter of the City of Dallas, prior to the adoption of the civil service amendment on May 1, 1931, contained a provision as follows:

" * * * Provided, further, that the members of the police department, as constituted at the time any charter amendment takes effect, providing for civil service, shall not be required to submit to a civil service examination, but in the event civil service shall be inaugurated, they shall continue in service subject to the provisions of the charter and the ordinances of the city and the rules and regulations of the department."

The civil service amendment itself contained the following provision:

"All persons in the employ of the city, holding positions in the classified service, as defined and established by the charter, at the time this amendment takes effect, and who have been filling said positions for a consecutive period of three months or more prior to the time that this amendment takes effect, shall, unless their positions or places of employment be abolished, retain the same until discharged, reduced, promoted or transferred in accordance with the provisions of this amendment."

■ The manifest purpose of these provisions was to constitute members of the police department employed prior to the adoption of the civil service amendment a part of the classified service and to exempt them from competitive examination. It is obvious, however, that merely because these parties were continued in the service without the necessity of an examination, they did not become invested with office, when no office had been legally created in the manner provided by the charter. Toomey v. McCaffrey, 116 N. J. Law 364, 184 Atl. 835. The civil service amendment did not assume to create offices or make appointments to service. City of Houston v. Mahoney, 36 Texas Civ. App. 45, 80 S. W. 1142.

■ It is further plain that although defendants in error were by virtue of the civil service amendment constituted a part of the classified service without examination, they nevertheless continued in the service subject to the provisions of the charter and the ordinances of the city and the rules and regulations of the department. It is also clear that they were to retain their positions only "until discharged, reduced, promoted or transferred in accordance with the provisions of this (civil service) amendment."

The civil service amendment (Section 117 of the charter) expressly provided as follows:

"The civil service board, subject to the approval of the governing body of the city, shall adopt, amend and enforce a code of rules and regulations providing for appointment and employment in all positions in the classified service based upon merit, efficiency, character and industry, which shall have the force and effect of law; also rules regulating reduction of force of employees and in what order they shall be dismissed and reinstated; shall make investigation concerning the enforcement and effect of this section of the charter and of the rules adopted under the powers herein granted."

■ In pursuance of this power, the civil service board did on December 14, 1931, adopt rules and regulations, and the same were approved by the city council December 23, 1931. They then became as much the law of the city as any provision of the city charter. Rule XIII thus promulgated dealt with the subject of "Efficiency." Among other things, this rule provided that the city manager should require all directors of departments and their administrative subordinates to make quarterly reports on the efficiency of employees subject to civil service regulations. It was further provided that the civil service board should ascertain the efficiency rating of the various employees of the departments, as determined by quarterly reports submitted by the directors of said departments and immediate superiors of said employees, and should keep a record of such rating. Section 5 of said rule expressly reenacted Section 124 of the charter and is as follows:

"It shall be the duty of the civil service board to fix a minimum standard of conduct and efficiency for each grade in the service, and whenever it shall appear from the reports of efficiency made to the said board for a period of three months that the conduct and efficiency of any employee has fallen below this minimum, that employee shall be called before the board to show cause why he should not be removed, and if upon hearing, no reason is shown satisfactory to the board, he shall be removed, suspended or reduced in grade, as the civil service board shall determine. (Charter, Section 124.) Provided, however, that in any such hearing the city manager shall be given notice of such hearing."

As regards to the removal of the defendants in error from the classified service within the police department, the record shows that on April 27, 1933, the civil service board addressed to each of these parties the following letter:

"You are requested to meet with the members of the Civil Service Board of the City of Dallas for private personal conference on Thursday afternoon, April 27th, at 5:00 o'clock in the Mayor's office of the City Hall.

"The Civil Service Board has carefully studied your efficiency reports for recent months, which indicate your efficiency rating as unsatisfactory. Under the provisions of the charter and the Civil Service regulations you are entitled to appear before the Board in person in this connection. The members of the Civil Service Board have spent many hours in studying, checking, verifying, and correcting these ratings, and are personally desirous of full personal discussion to prevent any possible error.

In compliance with provisions of the charter the City Manager also will be present in the conference."

It is agreed that in response to this communication each of the defendants appeared before the civil service board at the time designated and participated in the hearing, and on May 13, 1933, each of them received the following letter from the chief of police of the City of Dallas:

"I am advised by the Civil Service Board, in a communication addressed to City Manager John N. Edy and referred to me, that they have carefully examined your efficiency reports and find that you have fallen below the standard for services in this department; that they have spent many hours in investigation of information from various sources relative to the several reasons given for your failure and find nothing to indicate other than a fair and impartial estimate of your services.

"Therefore, under Section No. 124 of the City Charter, in view of the premises, your separation from the service becomes effective immediately."

Thereafter, each of the defendants in error addressed a communication to the "Manager, Board of Councilmen and Civil Service Board of the City of Dallas," complaining of the action of the chief of police, stating that they wished to appeal, and requesting that they be given a "public trial, after the City has filed its specifications of the crimes, misconduct, etc., that caused discharge." This communication was apparently referred to the city attorney, and on May 27, 1933, the city attorney addressed a communication to the members of the city council, which, among other things, contained the following:

"It appears from the petitions for a hearing and from the record that these officers were discharged by the Civil Service Board in pursuance of the provisions of Section 124 of the Charter, which provides, in substance, that it shall be the duty of the Board to fix the minimum standard of efficiency and conduct and whenever it appears to the Board that for a period of three months the standard of conduct and efficiency of an employee has fallen below the minimum, that the employee shall be called before the Board to show cause why he should not be removed and that upon a hearing if no satisfactory reason be shown to the Board, it may order his removal, suspension or reduction in grade. The charter makes no provision for an appeal in such cases either to the Council or the Trial Board, but in effect vests the final authority in such cases in the Civil Service Board.

"It is, therefore, my opinion that neither the Council nor the

Trial Board is authorized in these cases to afford the discharged parties a further hearing."

The agreed statement of facts shows beyond dispute that the action of the civil service board was based upon reports regularly made to it by the police department, in accordance with standards of efficiency, etc., theretofore regularly promulgated; that said reports were properly graded, and all proceedings leading up to the action of the board in removing defendants in error were regular. It is further shown that the hearing before the board was open, free and fairly conducted.

It will be observed from the letter of the chief of police that he did not himself discharge or attempt to suspend defendants in error, but merely advised them of the action of the civil service board in removing them from the classified service. He had no discretion in the matter.

It is thus shown that the removal of defendants in error from the service was by the civil service board, strictly in accordance with the civil service amendment, and particularly in accordance with the authority given by Section 124, and the rules and regulations promulgated under the authority of Section 117 of the charter.

■ But it is urged that defendants in error were entitled to a hearing before the "Trial Board," as provided for in Sections 121 and 122 and Section 71 of the charter. These sections are respectively as follows:

"Any officer or employee in the Classified Service may be removed, suspended, laid off or reduced in grade by the City Manager, in the event the Charter of the City of Dallas should be amended to provide for a City Manager, or the head of the department in which he is employed after the three months' probation period has expired; but, if demanded by such officer or employee, it shall be the duty of the officer discharging him to furnish him with a written statement of the reasons therefor and the said discharged or reduced officer or employee shall have the right to demand a public hearing upon said charges within a reasonable time thereafter before the Trial Board, as hereinafter defined."

"There is hereby created for the purpose of hearing and determining charges made against any officer or employee of the City in the Classified Service, a board to be known and designated as the Trial Board, which shall be composed of two members of the governing body of the city, selected by said governing body, and either the Chairman or Vice-Chairman of the Civil Service Board. The said Board shall have final jurisdiction to

hear and decide all appeals made to them by any discharged or reduced officer or employee in the Classified Service, and the judgment or decision of a majority of said Board shall be final. Any aggrieved officer or employee, who desires to avail himself of the right to appeal to said Board, must do so promptly and within ten days from the date of his notification of dismissal or reduction. He may be represented by counsel and shall have the right to an open hearing and to compel the attendance of such witnesses as he may desire to testify in his behalf. The appeal to said Board shall not suspend the execution of the order of dismissal or reduction pending said hearing. The Trial Board may either sustain or reverse the action of the City Manager or the head of the department as the case may be, or modify and amend the same as to them may seem just and equitable under all the facts and circumstances of the particular case."

"The Chief of Police shall have the exclusive right to suspend any of the officers or employees who may be under his jurisdiction and control for incompetence, neglect of duty, immorality, drunkenness or failure to obey orders given by the proper authority. If any officer or employee be suspended, as herein provided, the Chief of Police shall forthwith in writing certify the fact, together with the cause for the suspension, to the City Manager, who shall within five days from the receipt of such certificate, if demanded by the suspended officer or employee so to do, proceed to inquire into the cause of the suspension and render judgment thereon, which judgment, if the charge be sustained, may be suspension, reduction in rank or dismissal, and such judgment shall be final unless such suspended officer or employee shall desire to avail himself of the right to a public hearing before such board, or committee as may be provided by the Charter of the City of Dallas or ordinances passed in pursuance thereof."

After a careful study of these provisions of the charter, in light of the manifest purpose of the civil service amendment, and its provisions, it becomes perfectly clear to us that the appeal provided for in the foregoing sections is limited to actions on the part of the city manager and heads of departments in discharging or suspending members of the classified service for personal reasons and alleged official misconduct. Said sections do not attempt to give the right of appeal from the action of the civil service board in matters touching the efficiency and qualifications of the employees. There is absolutely nothing which allows an appeal from the action of the civil service board after the hearing provided for in Section 124 of the charter. The hearing therein provided for, which is to be had after due notice,

is certainly all that any employee could expect when questions concerning his efficiency have arisen.

It will be noted that under Section 71 of the charter the chief of police may suspend for "incompetency, neglect of duty, immorality, drunkenness, or failure to obey orders given by the proper authority." For such action the suspended officer may appeal to the trial board. Again, in Section 122 it is provided that the trial board is created for the purpose of "hearing and determining *charges* against any officer or employee in the classified service." This obviously has reference to charges concerning personal or official misconduct or behavior, and has nothing whatever to do with findings by the civil service board of failure to meet the requirements of efficiency standards.

Besides, to allow an appeal from the action of the civil service board in matters pertaining to efficiency and qualifications to the trial board, composed in part of two members of the governing body of the city, would tend to defeat absolutely the purpose of the civil service. Instead of vesting decision of questions of efficiency in a nonpartisan and nonpolitical board, it would make the decisions of the board subject to review and suspension by members of the political and appointive department. There is strong authority for the proposition that the question of efficiency or inefficiency in the performance of official duties is a matter peculiarly within the jurisdiction of the civil service board, and does not admit of an appeal, except perhaps to the courts in cases of gross abuse of discretion. See Keim v. U. S., 177 U. S. 290, 44 Law Ed. 774. It is clear that Sections 71, 121 and 122 were designed for the purpose of protecting employees against the prejudices of superior administrative officers and political and partisan influences from that source. On the other hand, the employee is amply protected in matters touching his efficiency and qualification, and unfair or biased reports by superiors, by the hearing provided for in Section 124 of the charter.

In so far therefore as defendants in error's cause of action constituted an attempt to be reinstated in the classified service, we think it appears from the undisputed proof that they were lawfully removed from the service in accordance with the provisions of the civil service amendment, and the rules and regulations of the civil service board; and were not entitled to an appeal to the trial board.

The motion for rehearing is in all things overruled.

Opinion adopted by the Supreme Court July 21, 1937.

. Third rehearing overruled December 1, 1937.