36 N.J. Super. 390 (1955)
116 A.2d 48
WILLIAM F. CONNORS, PLAINTIFF-APPELLANT,
v.
THE CITY OF BAYONNE, IN THE COUNTY OF HUDSON, GEORGE J. PRENDEVILLE AND LUCIUS E. JENKINS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 20, 1955.
Decided July 8, 1955.
*392 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Nicholas S. Schloeder argued the cause for the appellant.
Mr. William Rubin argued the cause for the respondents (Mr. Alfred Brenner, attorney).
The opinion of the court was delivered by FRANCIS, J.A.D.
Plaintiff, William F. Connors, brought an action in lieu of prerogative writ as an employee and a taxpayer of the City of Bayonne to test the validity of his removal as comptroller and the legality of the appointment of the defendant, Lucius E. Jenkins, to replace him. The trial court held that Connors did not have tenure and that his employment was for a fixed term which had expired prior to the naming of Jenkins. Consequently judgment was entered for the defendants.
In 1906 the City of Bayonne was governed by a Mayor and Council. On October 26 of that year an ordinance was adopted creating the office of comptroller. It seems plain from the language thereof that it was done pursuant to L. 1880, c. 112, p. 142, (R.S. 40:171-34, 35, 36 and 37), although the salary may not have conformed therewith. (Compare section one of ordinance and section one of the act, R.S. 40:171-34).
With respect to term, the ordinance provided that "his term of office shall be for the period fixed from time to time by the Mayor and Council, or prescribed by law." The statute *393 says he "shall hold his office for the term of three years and until his successor is elected and qualified." R.S. 40:171-35.
Under the 1880 Act and the ordinance the comptroller held a responsible, important executive position. He might well have been classified as a principal executive officer. He had "control of the fiscal concerns of all departments, bureaus, and officers of the city." R.S. 40:171-37; ordinance, sec. 3. (Emphasis ours.)
The ordinance continued in force until January 19, 1915 when it was repealed. The reason assigned for the action was that the "office is unnecessary and for reasons of economy should be abolished, and the duties thereof performed by the City Treasurer." The repealer said also that the "office of Comptroller is hereby abolished and the term of office of the incumbent thereof is hereby terminated." It may be noted also that at this time Bayonne was undoubtedly in the process of assuming the commission form of government. The parties have stipulated that since March 19, 1915 the city has been governed under the Walsh Act.
A board of commissioners in a municipality operating under that act acquires all administrative, judicial and legislative powers previously possessed by a mayor and council and has complete control over the affairs of the city. R.S. 40:72-2, 3. Also, it has all authority necessary to the government thereof "not in conflict with the laws applicable to all municipalities or the provisions of the constitution and, in addition to the powers conferred by [the Home Rule Act, R.S.] 40:42-1 et seq., may make, amend, repeal and enforce ordinances" for certain other general purposes which need not be detailed.
These powers of government were distributed into five departments, one being the department of revenue and finance. R.S. 40:72-4. In municipalities having a comptroller, the office would naturally  although probably not mandatorily  fall into the jurisdiction of the director of revenue and finance. Oliver v. Daly, 103 N.J.L. 52 (E. & A. 1926).
Between January 19, 1915 and May 29, 1917 Bayonne had no ordinance relating to the appointment of a comptroller.
*394 In June 1916 the Court of Errors and Appeals in Feeney v. Burke, 89 N.J.L. 359, declared that where the commission form of government had been adopted, a substantial decline was produced thereby in the stature and importance of a comptroller. He became "a mere employee of the commissioners"; he was no longer a principal executive officer.
On March 27, 1917 the Legislature enacted the Home Rule Act (R.S. 40:42-1 et seq.). It is clear that under the general powers conferred by Article XIV, section 1, thereof (R.S. 40:48-1) a board of commissioners established under the Walsh Act may adopt an ordinance designed for the appointment of a comptroller. Toomey v. McCaffrey, 116 N.J.L. 364 (Sup. Ct. 1936).
In any event on May 29, 1917, just two months after the Home Rule Act came into being, Bayonne promulgated a new ordinance covering the appointment of a comptroller. At this time the subordinate status, as a mere employee, of a comptroller in a commission-governed city was public knowledge by reason of Feeney v. Burke, supra. That the governing body was aware of his subservience to the director of revenue and finance readily appears from the language of the new enactment. No longer did he have control over the fiscal "concerns" of all departments as under the 1880 act (R.S. 40:171-37). Now his control was limited to the fiscal "records" (section 3).
Moreover the new ordinance contains no provision prescribing or relating to the length of the newly created comptroller's term. The provision is simply that a salary shall be fixed by the board of commissioners which "shall not be increased or diminished during his term of office." Section 2.
Connors was appointed comptroller on March 20, 1939. The manner of his appointment is not disclosed by the appendix. He continued to hold the post until April 14, 1954, when Jenkins was named to succeed him "for the term fixed by law."
On March 20, 1945 the then director of revenue and finance filed a letter with the city clerk reporting that as of that day he had appointed Connors comptroller "for the *395 term prescribed by law." Thereafter on May 13, 1947, and while Connors was acting as such, Bayonne adopted the Civil Service Act and it is still in force there.
Subsequently on April 5, 1948, a similar letter of appointment was filed by the next succeeding director of revenue and finance "for a term as prescribed by law." Finally, on March 20, 1951 the next director of the department notified that he had appointed Connors as comptroller "for a term of three years commencing April 6, 1951." Immediately after each of the letters referred to, Connors took the oath of office required by the ordinance. Shortly after the expiration of the three-year period set out in the last letter, Jenkins was appointed by the next director "for the term fixed by law."
Connors claims that when he was named comptroller on March 20, 1945 "for the term prescribed by law," no term having been fixed by any applicable law, either statute or ordinance, his employment was on an indefinite basis. Consequently, he urges that upon the advent of the Civil Service Act in the city, he acquired tenure during good behavior as a classified civil servant. As to his subsequent designations at three-year intervals, the contention is that they were mere forms and had no legal effect because his tenure status had already become fixed.
On the other hand, the city urges first that a three-year term was prescribed by law at all times during Connors incumbency and that the series of letters of appointment and oaths following them demonstrate his knowledge and recognition of such a term. Secondly, it contends that, in any event, a comptroller is a department head in municipal government and as such is specifically assigned to the unclassified service. R.S. 11:22-2.
Manifestly, if the Bayonne comptroller's term is fixed by statutory law or by an ordinance, which is not in conflict with such a statute or with a statute expressly or impliedly prohibiting the statement of a term, Connor's action must fail. Township of Woodbridge v. Civil Service Commission, 4 N.J. Super. 111 (App. Div. 1949); McGrath v. Bayonne, 85 *396 N.J.L. 188 (E. & A. 1913); Salter v. Burk, 83 N.J.L. 152 (Sup. Ct. 1912); Attorney General ex rel. McKenzie v. Elliott, 77 N.J.L. 43 (Sup. Ct. 1908); Bohan v. Weehawken, 65 N.J.L. 490 (Sup. Ct. 1900).
Did Connors have a term which was fixed or prescribed by law? This is a troublesome and perplexing question and the forcefulness of the argument on both the affirmative and the negative sides of it must be conceded.
The city relies mainly upon the 1880 act, supra (R.S. 40:171-35), which authorized the creation of the office of comptroller by the city council of any municipality and set the term at three years. Reference is made also to three other legislative enactments, R.S. 40:171-39 to 41, R.S. 40:171-109, and R.S. 40:171-159, but we have put them aside as inapplicable.
There is no doubt that the 1880 act was the source of the 1906 ordinance. If it was the source of the 1917 ordinance also, then whether or not the three-year term is recited therein, that term controls and plaintiff was properly replaced.
The approach to the problem must be conditioned, we think, by an awareness of the philosophy which motivated the Legislature in adopting the Civil Service Act. Primarily it was to remove employment in the classified service from political control, partisanship and personal favoritism, and to maintain stability and continuity in ordinary public employment. Therefore it behooves the judicial branch of the government to give the widest possible range to the application of the law. State Dept. of Civil Service v. Clark, 15 N.J. 334 (1954); Walsh v. Dept. of Civil Service, 32 N.J. Super. 39, 43 (App. Div. 1954), certification granted 17 N.J. 182 (1955); Wilson ex rel. Sullivan v. McOsker, 84 N.J.L. 380, 385 (E. & A. 1913).
The historical evolution of the 1917 ordinance, which has been outlined above, points away from the 1880 Act. A comptroller created under that act was a person of great consequence and considerable power under the mayor and council form of government. The position was abolished in Bayonne in 1915, the reason asserted being that of economy *397 and the belief that the duties could be performed by the treasurer. Whether the breadth of a statutory comptroller's authority played a part in the action, of course can only be conjectured.
Then in 1917 when a new ordinance was enacted to establish a comptroller, much had happened in the development of municipal government. Commission form of government, which had received legislative sanction in 1911 (R.S. 40:72-1 et seq.), was coming into common use. Our highest court in June 1916 had indicated definitely that under a board of commissioners a comptroller was no longer a principal executive officer but a mere employee. Just a few months prior to the ordinance, the Home Rule Act became law. And under that act authority was granted to municipalities, operating under the Walsh Act or otherwise, to appoint or employ a person who might be designated a comptroller, regardless of any other statute such as the 1880 Act. Toomey v. McCaffrey, supra.
In this climate the 1917 ordinance appeared on the scene. Certainly comparison with the 1906 document makes it certain that this earlier one was before the commission or the authorized drafters for that body when the new one was in preparation. The departures from the older repealed one are significant and must have been deliberate. If there had been any intention to proceed pursuant to the 1880 Act, only a few formal changes in language would have been necessary. But obviously if this had been done, a serious conflict of authority would have arisen between such a comptroller and the director of revenue and finance into whose department he was placed. R.S. 40:72-3, 4.
So in recognition of the comptroller's status as a mere employee, he was treated as such. He was not given the control of the fiscal "concerns" of all city departments, which was at the heart of the 1880 Act. He was made a subordinate of the director of revenue and finance and put in charge of the fiscal "records" of all departments.
Moreover, and as a further indication that the action was not being taken under the old act, no provision at all was *398 made for the comptroller's term. This is in sharp, and in this case we think decisive, contrast with the 1906 specification that the term "shall be for the period fixed from time to time by the Mayor and Council, or prescribed by law."
As a consequence of all this, we think the 1917 ordinance was not adopted under the 1880 Act but rather under the general powers granted by the Home Rule Act and the Walsh Act. Therefore we conclude that the three-year term fixed by the former has no relation to or effect upon the ordinance. Accordingly, when in 1945 Connors was designated comptroller "for the term specified by law," there being no such term, his appointment was for an indefinite period.
Thus Connors occupied the status of an employee serving indefinitely when Bayonne chose to embrace the Civil Service Act on May 13, 1947. As such a civil servant at that time, he acquired tenure and thereafter could not be removed except for good cause and after notice and hearing. R.S. 11:21-6; R.S. 11:22-3; R.S. 11:15-2; R.S. 11:2A-1; R.S. 11:15-4; R.S. 11:22-38, unless he was in the unclassified service as a department head as contended by the city. R.S. 11:22-2.
There is no merit in the assertion that the comptroller qualifies as a department head. Under the ordinance he has very limited authority and is subject in practically all of his activities to the director of the department of revenue and finance or the board of commissioners; he has no power to employ other persons to work under his direction and control. As the Feeney v. Burke case, supra, says, he is a mere employee. Chapman v. Edwards, 124 N.J.L. 192, 195 (Sup. Ct. 1940); Walsh v. Dept. of Civil Service, 32 N.J. Super. 39 (App. Div. 1954), certification granted 17 N.J. 182 (1955).
The effect of the two letters ostensibly reappointing Connors in 1948 for "a term prescribed by law" and in 1951 for a specific three-year period, remains to be considered. Since he had acquired tenure when his employer began operating under the Civil Service Act, the power no longer *399 existed to make another indefinite appointment in 1948 and one for a fixed term in 1951. The letters were surplusage and of no legal significance.
Sheridan v. McCurnin, 124 N.J.L. 493 (Sup. Ct. 1940), is analogous. There Bayonne, by ordinance, created the position of supervisor of auto buses. No term was prescribed either by the ordinance or any controlling statute. Sheridan was appointed for a short fixed term. However, he continued thereafter for almost four years when he was notified that his services were terminated as of June 15, 1939. Immediately thereafter he was appointed to the same office for a term ending December 31, 1939. He claimed tenure as a veteran under R.S. 38:16-1. By this statute a veteran holding employment, position or office is entitled to retain his position during good behavior if his term is not fixed by law.
The Supreme Court held that Sheridan had tenure, saying:
"* * * If the board possessed the power to create the office  and, as noted, this is granted  so also had it the authority to prescribe the term  a mere incident of the creative power. Here, the ordinance does not delimit the term, nor does it endow the commissioner in charge with such function as appurtenant to the power of appointment. Therefore, at the time of relator's appointment, the `term of office' was not `fixed by law.' His term was not coextensive with that of the governing body: the tenure was rather of the class durante bene placito. And so the term was indefinite, and the relator is consequently within the protection of section 38:16-1 of the Revision, N.J.S.A. 38:16-1, supra. [Citation omitted.] His removal in contravention of its provisions was therefore nugatory. The policy of the statute is not to be set at naught through an appointment for a fixed term by the departmental head. There being no fixation of a definite term by the creative authority, the tenure is during good behavior as prescribed in the last-cited section of the Revision." 124 N.J.L., at page 499.
The weight of all of the circumstances present here, considered with the spirit of our civil service legislation in mind, persuades us that Connors became possessed of tenure rights in 1947 by reason of the adoption of the Civil Service Act. Consequently it was possible to remove him only for good cause, and his summary dismissal at the end of a purported *400 three-year term was invalid. It follows also that Jenkins' appointment was nugatory because no vacancy existed.
The judgment is reversed and the record remanded for proceedings in accordance herewith.