**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1144-23

IN THE MATTER OF POLICE
CHIEF, PATERSON.

_____

Submitted January 7, 2026 – Decided March 11, 2026

Before Judges Paganelli and Jacobs.

On appeal from the New Jersey Civil Service Commission, Docket No. 2023-2167.

PRB Attorneys At Law, LLC, attorneys for appellant City of Paterson (Peter P. Perla, Jr., of counsel and on the briefs; Joseph P. Horan, II, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Civil Service Commission (Donna Arons, Assistant Attorney General, of counsel; Levi Klinger-Christiansen, Deputy Attorney General, on the brief).

PER CURIAM

The City of Paterson (City) appeals from the July 3, 2024 final agency decision of the New Jersey Civil Service Commission (Commission) denying its request to convert the title of Police Chief to the unclassified service of the civil

service.  Because the City fails to establish the Commission's decision was arbitrary, capricious, or unreasonable, we affirm.

We glean the procedural history and facts from the Commission's record. In October 2022, the City requested "to have its Police Chief position converted from the classified service to the unclassified service."  In December, the Commission denied the request because the statute "only permits unclassified appointments to the title of Police Chief in cities of the first class operating under the Mayor-Council Plan C form of government" and the City "is a Mayor-Council Plan D form of government," (citing N.J.S.A. 40:69A-60.7).

The City appealed from the Commission's denial.  In February 2023, the Commission denied the City's appeal.  The Commission considered the New Jersey Supreme Court's opinion in <u>Newark Superior Officers Association v. Newark</u>, 98 N.J. 212 (1985), and determined "the [C]ourt found N.J.S.A. 40:69A-60.7 applie[d] to municipalities that are or 'may in the future become first class cities operating under the Mayor-Council Plan C form of government.'"  Therefore, the Commission concluded, "N.J.S.A. 40:69A-60.7 remain[ed] applicable to cities of the first class that operate under the Mayor-Council Plan C form of government."  Further, the Commission concluded the City was a Mayor-Council Plan D form of government, and

therefore, the City's reliance on N.J.S.A. 40:69A-60.7 was misplaced and it could not appoint a Police Chief in the unclassified service.

In April 2023, the City requested the Commission to reconsider its denial of the appeal. Among other reasons, and aside from its continued reliance on N.J.S.A. 40:69A-60.7 and Newark, the City contended the Commission had "the legal authority to make any position unclassified under other authority." The City argued "a title []shall be allocated . . . to the unclassified service when" the "Commission determines that it is not practicable to determine merit and fitness for appointment in or promotion to that title by examination and that it is not appropriate to make permanent appointments to the title," (citing N.J.S.A. 11A:3-5 and quoting N.J.A.C. 4A:3-1.3(a)). The City repeated its request for "the Commission [to] convert its [P]olice [C]hief into an unclassified position."

In November 2023, the Commission determined the City had "failed to meet the standard for reconsideration." The Commission found the City did "not present new evidence or additional information which was not presented at the original proceeding which would change the outcome of the original decision, nor ha[d the City] prove[d] that a clear material error ha[d] occurred in the original decision."

A-1144-23

Instead, the Commission noted, the City did "not contend that the Commission . . . [had] either misinterpreted . . . N.J.S.A. 40:69A-60.7 or . . . Newark," but rather asserted "that the Commission may ignore the plain language of N.J.S.A. 40:69A-60.7 and grant its request on other grounds."

In December 2023, the City filed an appeal with the Appellate Division. The City and the Commission participated in the Appellate Division's Civil Appeals Settlement Program (CASP). After two CASP conferences, the appeal was dismissed without prejudice after the parties agreed to remand to the Commission for further proceedings.

On remand, the Commission "independently" considered the application of N.J.S.A. 11A:3-5 and N.J.A.C. 4A:3-1.3; N.J.S.A. 40:69A-60.7; and Newark. The Commission "noted that our courts have recognized the State's strong public policy . . . favoring the inclusion of as many titles as possible in the career service." Further, the Commission noted that "the New Jersey Legislature adopted the Civil Service Act 'primarily . . . to remove employment in the classified service from political control, partisanship and personal favoritism, and to maintain stability and continuity in ordinary public employment,'" (quoting Connors v. City of Bayonne, 36 N.J. Super. 390, 396 (App. Div. 1955)).

4                                                        A-1144-23

The Commission stated "N.J.S.A. 11A:3-5 provides various titles that are statutorily placed into the unclassified service." Moreover, the Commission noted titles could be placed in the unclassified service "as provided by statute or as [it] may determine in accordance with criteria established by rule," (quoting N.J.S.A. 11A:3-5(u)). The Commission contended N.J.A.C. 4A:3-1.1(a) allows it to allocate job titles to the unclassified service under certain circumstances.

The Commission found "[c]learly, the title of Police Chief is not specifically designated as unclassified by N.J.S.A. 11A:3-5." Further, "the parameters for reclassifying the Police Chief title are expressly provided for by N.J.S.A. 40:69A-60.7, not N.J.S.A. 11A:3-5." The Commission rejected the argument that, despite N.J.S.A. 40:69A-60.7, it could reclassify the title under N.J.S.A. 11A:3-5(u).

The Commission interpreted "the relevant provisions of N.J.S.A. 11A:3-5(u), as creating two mutually exclusive categories of titles that may be reclassified: [1] titles that may be reclassified as provided by separate statutes and [2] titles that may be reclassified in accordance with the Commission's rules."

The Commission explained:

> When the parameters for reclassification of a specific title are established by a separate statute and those

> parameters are not met, the Commission does not interpret its enabling statute as granting it authority to nevertheless allow for reclassification of that <u>same title</u>. In other words, when the Legislature has enacted a separate statute that establishes reclassification criteria, as it has for Police Chief, the Commission cannot reallocate that same title under the general authority of Title 11A of the New Jersey Statu[t]es or Title 4A of the New Jersey Administrative Code.

The Commission found that "[t]o interpret N.J.S.A. 11A:3-5(u) differently would create a conflict between, Title 11A," its enabling statute and N.J.S.A. 40:69A-60.7. Moreover, the Commission found "agency rules are designed to interpret or supplement but not contravene existing law." Further, the Commission noted a "specific statute covering a subject" would prevail over a general statute covering a subject, and thus N.J.S.A. 40:69A-60.7 must prevail over N.J.S.A. 11A:3-5(u).

Nevertheless, the Commission stated, even if it "did have independent authority to reclassify the title, <u>which it does not</u>, the Police Chief title in [the City] does not meet the criteria for reclassification under N.J.A.C. 4A:3-1.3." (Emphasis added). The Commission found: (1) there was no "specific statutory authority that designate[d] the Paterson Police Chief as unclassified," (citing N.J.A.C. 4A:3-1.3(a)(3)); (2) there was "no statute providing for the appointment of an incumbent in the title to serve for a fixed

6

term or at the pleasure of an appointing authority," (citing N.J.A.C. 4A:3-1.3(a)(4)); (3) "the job analysis for the Police Chief title identifies knowledge, skills[,] and abilities that may be evaluated utilizing the competitive examination process" and therefore, it was "practicable to determine merit and fitness for appointment in or promotion to th[e] title by examination," (citing N.J.A.C. 4A:3-1.3(a)(5)); (4) the City's Police Chief was not "an unclassified department head pursuant to N.J.A.C. 4A:3-1.3(b)"; and (5) the City's Police Chief was not "a principal executive officer" and "independent of other executive authority," (citing N.J.A.C. 4A:3-1.3(c)).

Therefore, the Commission determined "none of the criteria pursuant to N.J.S.A. 11A:3-5 and N.J.A.C. 4A:3-1.3 to permit the reallocation of the Police Chief title . . . to the unclassified service ha[d] been met."

Further, the Commission considered the City's argument that it could "relax the provisions of N.J.A.C. 4A:3-1.3 pursuant to N.J.A.C. 4A:1-1.2(c)." However, the Commission determined that because "the reclassification of the Police Chief [t]itle is governed by a separate statute," it could not "relax its rules to allow for reclassification of that title." The Commission reiterated that relaxation "would create a conflict between Title 11A, Chapter 4A, and N.J.S.A. 40:69A-60.7."

Moreover, the Commission stated that in <u>Newark</u>, the "[C]ourt did not find that 'any' city of the first class could appoint an unclassified Police Chief but rather, [it] upheld the criteria that only a city of the first class operating under the Mayor-Council Plan C form of government could appoint an unclassified Police Chief."  The Commission determined it could not "circumvent 'precedential case law.'"

Therefore,

> [t]he Commission f[ound] it does not possess the independent authority, pursuant to N.J.S.A. 11A:3-5 and N.J.A.C. 4A:3-1.3, to reallocate the Police Chief in [the City] to the unclassified service as this matter is directly governed by N.J.S.A. 40:69A-60.7 which the Commission does not have the jurisdiction to relax.

On appeal, the City argues the Commission's decision was arbitrary, capricious, and unreasonable.  It contends it needs the same flexibility to appoint a Police Chief that is afforded to other large cities.  The City argues it presents with "special circumstances" and the Commission "simply placed form over substance" in precluding relief based on the City's Mayor-Council Plan D form of government under N.J.S.A. 40:69A-60.7.  In addition, it asserts <u>Newark</u> supports its position because the Supreme Court recognized "there were special reasons why the largest cities in New Jersey needed the flexibility and discretion to appoint and remove their [P]olice [C]hiefs on an unclassified basis."

8

Moreover, it argues the Legislature provided the Commission with "the ability to place positions . . . into the unclassified service" under its rules, citing N.J.S.A. 11A:3-5(u).

Our review of administrative agency actions is limited. See In re Herrmann, 192 N.J. 19, 27 (2007). Therefore, "[a]n administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Id. at 27-28. "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." J.B. v. N.J. State Parole Bd., 444 N.J. Super. 115, 149 (App. Div. 2016) (alteration in original) (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)). The review includes:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its actions; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

"When an agency's decision meets those criteria, then a court owes substantial deference to the agency's expertise and superior knowledge of a particular field." Herrmann, 192 N.J. at 28.

"We must also acknowledge the deference that should be afforded to the interpretation of the agency charged with applying and enforcing a statutory scheme." Hargrove v. Sleepy's, LLC, 220 N.J. 289, 301 (2015). Although, we are "not bound by an agency's determination on a question of law, our courts give 'great deference' to an agency's 'interpretation of statutes within its scope of authority and its adoption of rules implementing' the laws for which it is responsible." Id. at 301-02 (citation omitted) (quoting N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 549 (2012)) (internal quotation marks omitted).

"In construing the meaning of a statute or the common law, our review is de novo." Nicholas v. Mynster, 213 N.J. 463, 478 (2013). "The objective of all statutory interpretation is to discern and effectuate the intent of the Legislature." Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012). "[W]e begin by looking at the statute's plain language," ibid., and give the language "its ordinary meaning and . . . construe[ it] in a common-sense manner." State in the Interest

of K.O., 217 N.J. 83, 91 (2014). "We will 'neither rewrite a plainly[ ] written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'" Sanchez v. Fitness Factory Edgewater, LLC, 242 N.J. 252, 261 (2020) (alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).

Applying this well-established law, we begin our analysis, like the Commission did, with the statute. N.J.S.A. 40:69A-60.7(a) provides:

> Notwithstanding the provisions of any other law to the contrary, the governing body of any city of the first class, which, . . . had adopted the form of government designated as "Mayor-Council Plan C" . . ., may provide, by ordinance, that the mayor shall appoint a [P]olice [C]hief . . . who shall serve in the unclassified service of the civil service of the city.

It is undisputed that while the City is a "city of the first class," its form of government is Mayor-Council Plan D, not C. Therefore, applying the plain language of the statute, there is no ability to provide for the Police Chief title in the unclassified service. The City's argument that the Commission erred by distinguishing it from Mayor-Council Plan C governments—Newark and Jersey City—is misplaced, because the distinction between the forms of government was not made by the Commission. Instead, the Legislature made the distinction in the statute. "The Legislature, and not the court, is the proper place for policy

11

arguments given that courts are not charged with passing judgment 'on the wisdom of the legislative enactment, but only on its meaning.'" Petro v. Platkin, 472 N.J. Super. 536, 570 (App. Div. 2022) (quoting Cnty. of Bergen Emp. Benefit Plan v. Horizon Blue Cross Blue Shield of N.J., 412 N.J. Super. 126, 138-39 (App. Div. 2010)). Moreover, the City has not sought to change its form of government. See N.J.S.A. 40:69A-1. The City has not sustained its burden to establish the Commission did not follow the law. See Allstars, 234 N.J. at 157.

Further, we reject the City's argument that the Commission could sidestep the clear terms of N.J.S.A. 40:69A-60.7 under its rules. Here, the Commission followed the specific requirement of the statute, and its position that it could not "contravene existing law" was not contrary to law, see Allstars, 234 N.J. at 157; or "arbitrary, capricious, or unreasonable." See Herrmann, 192 N.J. at 27.

Lastly, the City's reliance on Newark is overstated. The City recited the Court's language as:

> Applying this standard, we find it difficult to conceive a rational basis for excluding other municipalities that may in the future become first class cities . . . . The reasoning that supports the constitutionality of the statute prior to this amendment, . . . would apply as well to municipalities that in the future become first class cities.

A-1144-23

[(Citation omitted) (emphasis omitted).]

However, the Court actually stated:

> Applying this standard, we find it difficult to conceive a rational basis for excluding other municipalities that may in the future become first class cities operating under the "Mayor-Council Plan C" form of government. The reasoning that supports the constitutionality of the statute prior to this amendment, would apply as well to municipalities that in the future become first class cities operating under the "Mayor-Council Plan C" form of government.
>
> [(Citations omitted).]

Thus, the City's omissions through the first ellipsis and at the end of their cited language excludes language that supports the Commission's position. See Newark, 98 N.J. at 231. Therefore, the Commission's position that it could not "circumvent 'precedential case law'" was not contrary to law, see Allstars, 234 N.J. at 157; or "arbitrary, capricious, or unreasonable." See Herrmann, 192 N.J. at 27.

Having reviewed the record, we are satisfied the City fails to establish the Commission's decision was arbitrary, capricious, or unreasonable.

To the extent we have not addressed defendant's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division